IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| GLORIA WILLIAMS, | ) | CASE NO. 1:19-CV-01859 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| COMMISSIONER OF SOCIAL SECURITY, | ) | ORDER |
| | ) | |
| | ) | |
| Defendant. | | |

## **Introduction**

Before me[1] is an action by Gloria Williams under 42 U.S.C. § 1383(c) seeking judicial review of the August 16, 2018 decision of the Commissioner of Social Security that denied William's 2016 application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my initial[5] and pre-trial[6] orders the parties have briefed their positions,[7] filed

---

[1] ECF No. 11. The parties consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Solomon Oliver, Jr.
[2] ECF No. 1.
[3] ECF No. 8.
[4] ECF No. 9.
[5] ECF No. 5.
[6] ECF No. 12.
[7] ECF Nos. 16 (Williams), 19 (Commissioner).

1

supplemental fact sheets and charts,[8] met and conferred with the objective of reducing the issues for judicial resolution[9] and participated in a telephonic oral argument.[10]

For the following reasons, the decision of the Commissioner will be affirmed in part and reversed in part with the matter then remanded for further proceedings.

**Facts**

Williams, who was born in 1969, attended school only through the eighth grade and has no past relevant work experience.[11] At the time of the hearing she resided with her husband and testified to doing about two hours per day of limited household work.[12] She does not drive.[13]

The ALJ found that she has the following severe impairments: chronic obstructive pulmonary disease (COPD), ischemic heart disease and deep vein thrombosis.[14] The ALJ further found that she has a non-severe impairment of depressive disorder.[15] The ALJ concluded that none of the severe impairments met or medically equaled a listing.[16]

The clinical medical evidence shows that in 2016 Williams was diagnosed at a consultative examination as having COPD, a history of pulmonary embolism, a history of

---

[8] ECF Nos. 15 (Williams), 20 (Commissioner).
[9] ECF No. 21.
[10] ECF No. 23.
[11] Tr. at 412-13.
[12] *Id.* at 414-15.
[13] *Id.* at 417.
[14] *Id.* at 395.
[15] *Id.*
[16] *Id.* at 396-97.

2

DVTs and chronic low back pain.[17] The consulting examiner opined at that time that Williams would have mild to moderate limitations with exertion.[18] The next year, in August 2017, Williams saw Dr. Tyler Gutkoski, M.D., complaining, *inter alia*, of back pain that began two months before and was worsening.[19] Shortly thereafter she began physical therapy for her back pain and by the third treatment Williams reported improvement and did not attend further sessions.[20]

Approximately a year later – April 9, 2018 – Williams was again seen by Dr. Gutoski as she complained that her back pain had worsened.[21] A physical examination at that time found that there was tenderness in her spine[22] and an x-ray from April 13, 2018 disclosed mild levoscoliosis and "considerable" narrowing of the L5-S1 disc space, with osteophyte formation at multiple levels.[23] The radiologist concluded that the image showed "considerable narrowing L5-S1 secondary to degenerative disc disease" and "levoscoliosis with osteophytes."[24]

A physical function report completed by Dr. Gutkoski and dated contemporaneously with his examination but a few days before the x-ray states that Williams is limited to lifting and carrying three to four pounds, and limited standing/walking to four hours in an eight-hour workday.[25] While Dr. Gutkoski opined that there were no limitations on sitting and

---

[17] *Id.* at 823.
[18] *Id.*
[19] *Id.* at 1018.
[20] *Id.* at 399.
[21] *Id.* at 400.
[22] *Id.*
[23] *Id.* at 1102-03.
[24] *Id.* at 1103.
[25] *Id.* at 1090.

3

that stooping or kneeling could be occasionally done, he stated that other postural activities could only be done rarely.[26] He further stated that Williams would need to elevate her legs to 90 degrees and require two hours of extra break time during the workday.[27]

The ALJ gave this opinion only partial weight, noting first that there were only two treatment sessions with Williams, so that Dr. Gutkoski was not a treating source.[28] He further concluded that Dr. Gutkoski's 2018 functional limitations were not "consistent with the evidence as a whole."[29] In that regard I note that the ALJ did not mention the x-ray that was done within days of Dr. Gutkoski's opinion and show how those results are inconsistent with Dr. Gutkoski's functional opinion.

While the ALJ gave only partial weight to Dr. Gutkoski's 2017 functional opinion he gave great weight to a 2016 opinion by Dr. Robin Benis, M.D.[30] who examined Williams once on October 12, 2016.[31] Not only did Dr. Benis examine Williams a year before Dr. Gutkoski and obviously did not consider the 2018 x-ray, the ALJ also admitted on the record that Dr. Benis never actually gave a detailed functional assessment, choosing only to describe Williams as having "mild to moderate limitations with respect to exertion."[32]

Similarly, the ALJ gave great weight to opinions of two state agency reviewers – Dr. Obiaghanwa Ugbana, M.D., dated October 15, 2016 and Dr. Steve E. McKee, M.D.,

---

[26] *Id.*
[27] *Id.*
[28] *Id.* at 402.
[29] *Id.*
[30] *Id.* at 401.
[31] *Id.* at 400.
[32] *Id.* at 401.

4

dated December 26, 2016.[33] Although the ALJ took note that non-examining sources "as a general rule" do not deserve as much weight as examining or treating sources, he felt that these two record reviewing sources from 2016 deserved more weight than Dr. Gutkoski because – in an odd formulation – "the updated evidence including the testimony did not change the assessment."[34] Clearly the ALJ cannot mean that testimony from a hearing in 2018 could possibly have been known to and considered by reviewers who gave an opinion in 2016, who then stuck to their original views. Unfortunately, the ALJ seems to be admitting without explaining the details that the 2018 hearing – and its evidentiary record – didn't change the ALJ's assessment that everything one needed to know about Williams condition was known in 2016, an unreasonable proposition on its face in light of the 2018 x-ray that passed without comment by the ALJ.

That said, the ALJ gave an RFC that Williams was capable of light work with some limitations, but with the provision that Williams "needs to be able to sit and stand to do the work," which includes her constant use of hand and foot controls.[35] Following testimony of a VE that three jobs fitting the RFC were available in significant numbers in the national economy, the ALJ determined that Williams was not disabled.[36]

## **Analysis**

This case presents three issues that all relate to how Williams's lower back pain was addressed by the ALJ. In particular, Williams argues that the ALJ erred by not recognizing

---

[33] *Id*. at 400.
[34] *Id*.
[35] *Id*. at 397.
[36] *Id*. at 404.

5

her back pain as a severe impairment, that he erred by not properly analyzing and weighing the opinions of Dr. Gutkoski, and that he further erred by giving greater weight to the opinions of the state agency reviewers, as well as Dr. Benis, all of who did not review the 2018 x-ray and diagnosis by Dr. Gutkoski.[37]

The decision path narrowed considerably during the telephonic oral argument when Williams's counsel conceded that nothing in the record provides substantial evidence that her lower back pain was a severe impairment prior to 2017 when she began treatment with Dr. Gutkoski. So understood, the ALJ was on firm ground in giving the weight he did to the functional opinions of the two state agency reviewers – each given in 2016 – and the opinion of Dr. Benis, also rendered in 2016. Thus, substantial evidence supports the finding that the lower back pain was not shown to be a severe impairment until the time that Williams first saw Dr. Gutkoski in 2017, complaining of "worsening" back pain.

At that point, as the record shows, Williams began a relatively unsuccessful course of physical therapy that brought Dr. Gutkoski in 2018 to obtain the x-ray definitely showing "considerable" narrowing of disc space in the spine due to degenerative disc disease and prompting Dr. Gutkoski to issue a new functional assessment that reflected the documented severity of Williams's condition.

The ALJ neither specifically addressed the x-ray – a key piece of clinical evidence – nor fully explained why Dr. Gutkoski's 2018 opinion was not deserving of great weight, beyond the merely conclusory statement that this opinion was inconsistent in some

---

[37] ECF No. 16 at 1.

unnamed manner with the "evidence as a whole." This thin reason was accompanied by the remark that the "updated evidence" – *i.e.*, presumably the x-ray – did not change the assessment given in 2016 by sources that never saw the x-ray. One awaits an explanation of how that's possible.

In short, there is substantial evidence to support the ALJ's finding that Williams's back pain was not a severe impairment up to the point where Dr. Gutkoski became involved and no substantial evidence to support the RFC going beyond that point, which rests on the ALJ's failure to properly weigh Dr. Gutkoski's 2018 functional opinion that was backed by the x-ray.

## **Conclusion**

Accordingly, the Commissioner's decision is reversed in part and affirmed in part as is detailed above. The matter is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 29, 2020                           s/William H. Baughman Jr.
                                                                   United States Magistrate Judge